FILED
U.S. DISTRICT COURT
2006 NOV 22 A 11: 08
DISTRICT OF UTAH
BY:_____
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| **GARY CLEMENTS and DAVID GERBER,**  Plaintiffs,  v.  **RESOURCE CONSULTANTS, INC.,**  Defendant. | **MEMORANDUM OPINION AND ORDER**  Case No. 2:04CV01008  Judge Dee Benson |

On June 5, 2006, the Court issued an order granting summary judgment for plaintiffs' claims for overtime compensation under the Fair Labor Standards Act ("FLSA"). Plaintiffs have filed the present motion for back pay, liquidated damages and attorneys' fees.

## BACKGROUND

Resource Consultants, Inc. ("RCI") conducted recruiting for the U.S. Army and Army Reserves beginning in January 2002. Plaintiffs Gary Clements and David Gerber ("plaintiffs") worked for RCI as recruiters from September 2002 through August 2003. The plaintiffs filed the present lawsuit seeking compensation for overtime under the FLSA. On June 5, 2006, the Court issued an order granting summary judgment for plaintiffs' claims for overtime compensation under the FLSA. The Court also ruled that plaintiffs' are entitled to an award of reasonable attorneys' fees and costs as a matter of law pursuant to 29 U.S.C. § 216(b).

In support of their claim for back pay, plaintiffs cite letters they wrote to the DOL concerning their pay structure. In his letter to the Department of Labor ("DOL"), David Gerber described the employment contract as follows:

> I applied for the job through work force services. I was hired on a salary basis of $600.00 per week plus commissions. After six months my salary was raised to $606.00 per week plus commissions…I was paid my salary every two weeks…My salary was never deducted for time missed because I never missed any time from work…I averaged between 10-20 hours of work in excess of 40 per week consistently.

*See* Exhibit A to Def. Mem. on Back Pay. Garry Glements described the employment arrangement in similar terms, stating:

> I was hired on a salary basis of $31,200.00 per year plus commissions. I was paid my salary every two weeks. My Salary was never deducted for missed time from work for illnesses or personal time off…I averaged anywhere between 10 and 20 hours of work in excess of 40 per week. I would estimate I worked on average 52 hours weekly on a consistent basis.

*See* Exhibit B to Def. Mem. on Back Pay. Both plaintiffs testified by affidavit that "At the time I was hired by RCI, I was told by Steve Hixson that I would be paid a salary of $600.00 per week and that this would work out to $15.00 per hour. On several occasions, Mr. Hixson stated that the salary I was being paid made my effective rate of pay $15.00 per hour." Plaintiffs' Response to Calculation of Back Pay, Exhibit 1, ¶3, and Exhibit 2, ¶3.

With respect to attorneys' fees, plaintiffs' counsel submitted time sheets detailing the worked they performed and the time allotted to each assignment. *See* Affidavit of Richard Hymas, Exhibit 1. The bulk of counsel's work pertained to preparing plaintiffs' motion for summary judgment and preparing for oral argument. Mr. Hymas described the hourly rates of those who worked on the case as follows:

> 9.      My customary billing rate at the time I began representing Plaintiffs in this action in April 2004 was $190.00 per hour. My customary billing rate was increased to $200.00 per hour beginning January 2005. Since joining Durham Jones & Pinegar on February 16, 2006, my customary billing rate has been $250.00 per hour. However, I have recorded my time on this case since February 16, 2006, at the rate of $220.00 per hour.
> 10.     Chad J. Pomeroy, a senior associate attorney with Durham Jones & Pinegar, worked on this case after February 15, 2006…Mr. Pomeroy's customary billing rate is $175 per hour, which is within the market rate charged in Salt Lake City for attorneys with his level of skill, experience and expertise.
> 11.     Justin Atwater is a law clerk at Durham Jones & Pinegar who has worked o this case in June 2006…His billing rate is $120 per hour, which is within the market rate charged in Salt Lake City for law clerks with his level of skill and experience.
> 12.     During 2004, Kara Rodriguez Reese worked on this case. At that time, she was an associate attorney with Nielsen & Senior, in her third year of practice. Ms. Reese's customary billing rate at the time was $125 per hour, which was within the market rate charged in Salt Lake City for associate attorneys with her level of skill and experience.
> 13. Amy Rose was a paralegal at Nielsen & Senior who worked on this case during 2004. Her billing rate during that time was $65 per hour. Robert Cassity worked on this case while clerking at Nielsen & Senior in 2004 and 2005. His billing rate was $75 per hour. The billing rates for these individuals were at the low end of the range generally billed by paralegals and law clerks in Salt Lake City at that time with their level of skill and experience.

*Id.*, ¶¶ 9-13. Stan Preston, an attorney in Salt Lake City who also practices in the field of employment law, submitted an affidavit testifying to the reasonableness of these rates. Mr. Preston testified, "Based on my experience and in my view, these rates are on the lower end of rates charged by Salt Lake City attorneys handling employment cases, who have the skill and experience of Mr. Hymas." Affidavit of Stan Preston, ¶ 5. The sum of plaintiffs' counsel's work through June 30, 2006, was $30,152.00. *See* Affidavit of Richard Hymas, Exhibit 1, ¶ 14. The bulk of this work related to plaintiffs' motion for summary judgment. Later, plaintiffs' counsel submitted a supplemental affidavit in which they documented an additional $7,734.00 of work done after June 30, 2006. *See* Supplemental Affidavit of Richard Hymas. The bulk of counsel's supplemental work related to the present motion for back pay, liquidated damages and attorneys' fees and costs.

3

## ANALYSIS

### I.  Back Pay

The FLSA requires eligible employees to be compensated at 1.5 times their hourly wage for overtime hours worked. Where certain conditions are met, however, the rate is reduced to 0.5. This is called the "fluctuating workweek" method. The Code of Federal Regulations describes when the fluctuating workweek formula should be utilized:

> <u>Where there is a clear mutual understanding of the parties</u> that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. *Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week.* <u>Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.</u>

29 C.F.R. § 778.114 (emphasis added). Several courts have ruled that the fluctuating workweek formula was proper where an employee was paid a fixed salary regardless of the actual hours worked each week. *See Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988); *see also Martin v. Tango's Restaurant*, 969 F.2d 1319 (1st Cir. 1992); *see also Yadav v. Coleman Oldsmobile*, 538 F.2d 1206 (5th Cir. 1976).

The parties dispute whether RCI and the plaintiffs reached a "clear mutual understanding" that the plaintiffs' salary was intended as compensation for each work week, no matter the hours worked, thus triggering the "fluctuating workweek" exception. In their letters to the DOL, the

4

plaintiffs describe a salary, not an hourly, wage agreement. The plaintiffs stated that they were hired on a salary basis and that they routinely worked more than 40 hours a week. The plaintiffs do not mention an hourly wage rate and their salaries were never deducted for time off. Moreover, in the plaintiffs' affidavits they state that they "would be paid a salary of $600.00 per week." When referring to an hourly rate, they merely note that "Mr. Hixson stated that the salary I was being paid made my effective rate of pay $15.00 per hour." An effective hourly rate does not mean that either the plaintiffs or RCI understood that the plaintiffs were being paid by the hour. Rather, plaintiffs' representation shows that they understood that they were salaried employees and that their hourly rate of pay would equal $15.00 if they worked 40 hours per week. The plaintiffs and RCI mutually understood that the plaintiffs were salaried employees; therefore, the fluctuating workweek formula should be applied when calculating the plaintiffs' back pay.

The plaintiffs argue that the fluctuating workweek formula cannot be applied retroactively. They contend that retroactive application of the fluctuating workweek method is improper because RCI failed to raise the "fluctuating workweek" argument at the summary judgment stage. In the Order granting Summary Judgment, however, this Court ruled only that the plaintiffs were employees under the FLSA and that they were not exempt under the "outside salesman" exemption. Neither the amount nor the calculation of overtime pay was ever discussed. Many courts that have addressed the question have allowed retroactive application of the fluctuating workweek calculation method. *See Valerio v. Putnam Associates, Inc.*, 173 F.3d 35, 39-40 (1st Cir. 1999); *see also Martin v. Tango's Rest., Inc.*, 969 F.2d 1319, 1324 (1st Cir. 1992); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138-39 (5th Cir. 1988). The Court's Order granting plaintiffs' motion for summary judgment did not address the issue of calculating back pay;

5

therefore, the Court finds that the issue was not foreclosed and is properly addressed here. Because the fluctuating workweek method is appropriate and the plaintiffs have not disputed RCI's submitted calculation of back pay using the fluctuating workweek method, the Court hereby rules that Mr. Clements is entitled to $3006.82 in back pay and Mr. Gerber is entitled to $3651.02 in back pay.

## II. Liquidated Damages

Under the FLSA, "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The Court can elect not to award liquidated damages "if the employer shows to the satisfaction of the court that the act or omission ... was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA." 29 U.S.C. § 260. The Tenth Circuit has stated, "It is necessary for [RCI] to meet both of the requirements in order to avoid liquidated damages." *Renfro v. City of Emporio*, 948 F.2d 1529, 1540 (10th Cir. 1991) (citation omitted). "The employer has the plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds ... in the absence of such a showing the district court has no discretion to mitigate an employer's statutory liability for liquidated damages." *Id.* "The good faith requirement mandates the employer have an honest intention to ascertain and follow the dictates of the Act." *Id.*

RCI has failed to meet its burden of showing that it had an honest intention to ascertain and follow the dictates of the FLSA with respect to these plaintiffs. In *Renfro*, the Tenth Circuit ruled

6

that a single phone call to the DOL, of which the employee who made the call had only a vague memory, was insufficient to establish an intention to ascertain and follow the FLSA. In the present case, RCI has offered no evidence that it contacted the DOL or sought any other authoritative position about the employment arrangement.

RCI argues that the unsettled state of the law regarding whether army recruiters qualify for the "outside salesmen" exemption to the FLSA should preclude an award of liquidated damages. RCI's reliance on the unsettled state of the law, however, is of little effect because there is no evidence that RCI researched the state of the law at the time it made the employment arrangement. Because RCI has failed to submit evidence meeting the good faith standard announced in *Renfro*, it is liable for liquidated damages in amount of $3006.82 for Mr. Clements and $3651.02 for Mr. Gerber.

## III. Attorneys Fees and Costs

Where plaintiffs prevail on a claim under the FLSA, "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In reaching an award of attorneys' fees, a court first calculates the "lodestar" figure, which is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The first step in calculating the lodestar amount is to determine the number of hours reasonably spent by counsel for the party seeking the fees. *See Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998). The party applying for attorneys' fees bears the burden of showing that the hours asserted are reasonable. *See Blum v. Stenson*, 465 U.S. 886, 897 (1984). The number of hours is then

7

multiplied by a reasonable rate. In determining a rate of compensation, the court should determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time. *See Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983).

Plaintiffs' counsel has provided spreadsheets detailing the hours worked on this case by each attorney and paralegal and the rates they charged. The spreadsheets break down the date, the hours worked, the attorney that performed the work, the amount billed, and a description of the work done. Richard Hymas, the lead attorney, worked 127.7 hours on the case and charged his time at a rate of $190 per hour in 2004, $200 per hour beginning in 2005, and $220 per hour beginning on February 16, 2005, when he joined Durham, Jones & Pinegar. Stan Preston, a shareholder at Snow Christensen with considerable experience in employment law, submitted an affidavit stating that he believes Mr. Hymas' rate to be "on the lower end of rates charged by Salt Lake City attorneys." Affidavit of Stan Preston, ¶ 5. Mr. Preston also stated that he believed the rates charged by the other attorneys and paralegals involved in the suit to have been reasonable and noted that his regular rate is $260 per hour. *See Id.*, at ¶ 2 and ¶ 5.

RCI argues that plaintiffs' attorneys' fees should be reduced because the work was not described with adequate specificity, plaintiff's counsel employed "block billing," and certain work was duplicative or excessive. RCI's arguments, however, are unpersuasive. First, plaintiffs' counsel described the work they completed in increments of 1/10 of an hour. While some of the descriptions of the time expended are brief, they are sufficiently descriptive to qualify as reasonable. Second, plaintiffs did not engage in block billing. Block billing consists of billing an entire block of time without listing the exact tasks performed and the corresponding time devoted to those tasks. They described the work they completed by task, which typically lasted from one to

four hours. This is a standard method employed by attorneys and it satisfies their burden. Third, plaintiffs' counsel sufficiently explained the allegedly duplicative work in their reply memorandum. Most importantly, plaintiffs' counsel's total time expended on the case and the rates they charged were reasonable. For these reasons, plaintiffs' are entitled to attorneys' fees and costs in the amount of $37,886.00 and $1252.87 respectively.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for back pay is GRANTED in the amount of $3,006.82 for Mr. Clements and $3,651.02 for Mr. Gerber; plaintiffs' motion for liquidated damages is GRANTED in the amount of $3,006.82 for Mr. Clements and $3,651.02 for Mr. Gerber; and plaintiffs' motion for attorneys' fees and costs is GRANTED in the amount of $39,138.87.

DATED this 21ST day of November, 2006.

Judge Dee Benson